PEOPLE ex rel. WALSH v. ROOSEVELT et al.

(Supreme Court, Appellate Division, First Department.    November 12, 1897.)

DISCHARGE OF POLICEMAN—EVIDENCE.
    If, upon certiorari to review dismissal of an officer from the police force, the court is of opinion that the charge was not sustained by evidence entitled to belief, the proceedings will be annulled, and the relator reinstated upon the force.

Certiorari by the people on the relation of John J. Walsh against Theodore Roosevelt and others to review dismissal of relator from the police force.    Dismissal set aside.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Louis J. Grant, for appellant.
Terence Farley, for respondents.

VAN BRUNT, P. J.    The evidence in this case is very short, and the trial seems to have been entirely informal.    Witnesses do not seem to have been sworn, and appear simply to have given their statements before the commissioners.    Patrolman McConnell stated: That he was sent to bring the police commissioners of Trenton around through the city, and they went down to Chinatown, and in Doyer street he saw an officer in uniform (the witness Hart) talking to a man in citizens' clothes.    That he went over to him, and asked him if he knew any place worth seeing.    That he told him who the gentlemen were that were with him.    The officer informed him that he was a stranger there, but would send to the corner to see if the ward man was there.    That he stepped aside, and the relator came up to him, and said, "You are Officer McConnell from the Central office, and those people with you are police commissioners of Tren

ton?" McConnell answered, "Yes," and the relator said, "You are a God damn liar, and no gentleman." McConnell states that he did not know who the relator was; that the relator started towards him, and the officer in uniform stepped in between, and told relator to go and mind his own business. Patrolman Hart was then called as a witness, and he stated that he was present at the time, and in answer to the question, "What conversation did you hear?" he answered: "I saw this officer coming down in citizens' clothes, with a party of gentlemen. This gentleman (Officer Walsh) was standing there in citizens' clothes, and I asked him who this party was coming down Pell street, and he said he thought they were sightseers; and as the party passed this officer here in citizens' clothes (McConnell) came back, and spoke to me, and asked me who this man was, and I told him he was an officer; and this officer (McConnell) said, 'I am from Inspector Brooks' office, and this is the board of police commissioners of Trenton,'—something like that. He didn't express it properly, and this officer (Walsh) said, 'The board of commissioners of police commissioners of Trenton,' and this officer (McConnell), evidently thinking he repeated it after him, because he didn't express it correctly, said, 'Now, as you are so smart,'—or 'damn smart,' I don't know which he used,—he said, 'we don't want your assistance at all.' So Officer Walsh spoke up then, and I forget what he said, but he got excited, and later on I heard him say Officer McConnell was no gentleman, and I told Officer McConnell to come with me to the Bowery, as I was not acquainted, and we would find the ward man. We went, and I could not find the special officer, and in coming back I told Officer McConnell to take the party into No. 12. So they went into No. 12, where this officer was stationed, and Officer McConnell came to me, and said, 'I don't want that man following me up.' I said, 'It is his special post; he is stationed there;' and with that Officer Walsh came out, and said, 'You are no gentleman to use that language,' and he became very excited, and I told him to go away, and Officer Walsh said, 'Hart, you ought to patrol your post,' and I said, 'Walsh, you attend to your business, and I will attend to mine.'" The defendant was then examined, and said, "I did not insult the man at all." When asked the question "What did you say to him?" he answered: "This man came along with this party, and I asked him who they were, and I said, 'Sightseers?' and he said, 'I don't want any of your assistance at all.' He turned to me, and said, 'I will put you in uniform, and I will transfer you,' which he did already, and he turned around, and said, 'I will give you a punch in the God damn mouth,' and I said, 'You are no gentleman to use that language to me.'" The testimony upon the part of Officer McConnell is absolutely incredible. There is no motive shown, nor any reason whatever given for the exclamation which Officer McConnell states as having been made by the relator. Officer Hart— an impartial witness—gives an entirely different version of the transaction. It is true that it is sought to impair his testimony by a statement that he had said something different at the station house, but no evidence of the fact was attempted to be given. The relator's

statement does not entirely agree with the version given by Hart, but in the main they concur, and they certainly establish the fact that Officer McConnell's account of the transaction is entirely incorrect. It is impossible to come to the conclusion that the relator without any provocation, or any previous conversation with McConnell, for no reason whatever, should use the language imputed to him.

I am of opinion that the charge was not sustained by any evidence entitled to belief, and that the proceedings should be annulled, and the relator reinstated, with costs.   All concur.